McKinney, J.
delivered the opinion of the court.
The complainant, Susan C. Haywood, is the wife of Thomas Haywood; and the other complainants, except Joseph Nash, are the children of said Thomas and Susan C. Haywood, and grand children of John Haywood dec’d.: said Joseph Nash is the husband of Martha, one of the children of Thomas and Susan C. Haywood.
It appears from the allegations of the bill, that John Haywood, in his lifetime, purchased of one Lynch, a tract of land in Davidson county, containing 211 acres; and that he after-wards, by deed, founded upon the consideration of natural love and affection, declared himself a trustee of said tract of land, for the benefit of Susan C. Haywood, and her children, as a settlement for their support and maintainance, in consequence of the incapacity of said Thomas Haywood. A portion of the purchase money of this tract of land remained due to . Lynch, and it was also incumbered by mortgage. By his last will and testament, said John Haywood devised said land to his executor, .Egbert Haywood, upon the same trust declared" in said deed, and charged his estate with the payment of whatever sum might remain due, either to the incumbrancers or to said Lynch. But his estate being found insolvent, no part of either of said debts was discharged by the executor; and by a decree in chancery, said tract of land was ordered to be sold, unless the balance reported to be due, being $1347 97, should be paid on, or before the 15th day of September 1835. Thomas Haywood being insolvent, and the complainants being also wholly destitute of means, no part of the decree was satisfied, and the land was advertised for sale. Under these circum *462 stances, Thomas Haywood, and the complainant, Susan, in great distress at the prospect of losing said land, sent a messenger to Alabama to solicit from some of their wealthy relations the means of discharging said decree, so as to prevent a sale of said land. The messenger returned before the day of sale, with a letter from one Jones, one of the relatives applied to in Alabama, giving them assurance that he would attend the sale, and purchase in the land for the benefit of complainant, Susan C. Haywood and her children. Failing to arrive, however, on the day before the sale, Thomas Haywood, in a state of great mental anxiety and distress, addressed a note to the defendant, Ensley, a neighbor, living on the adjoining tract of land, who was a man of wealth, and could at all times command any amount of money he might desire, making an appeal to him to buy in said land at the sale, then near at hand, for the benefit of his wife and children, in order that they might not be turned out of house and home; and offering him as security for the money, he might advance, the use of said land, until it should be paid; and that Ensley sent word by the bearer of the note that he would do so. “That on the day of sale, said Ensley came by the house of Thomas Haywood, on his way to the sale, and then and there verbally, in person, renewed to said Thomas Haywood the assurance that he would buy saidland for the benefit of complainants, and hold the land as a security for the repayment of the purchase money to him. and that the said Thomas, relying on this assurance that the land would be saved for his wife and children, did not attend the sale, and made no further efforts to procure a purchaser, or to make any arrangement whereby the land might be preserved for the complainants.” Said Ensley purchased the land at said sale, and hindered competition in bidding, as al-ledged, by the representation that he was buying the land for the benefit of complainants. The possession of the land was shortly afterwards surrendered to Ensley, in pursuance of the *463 agreement tfyat he was to have the use of the land as security for the repayment of the purchase money, and he has continued to occupy the same ever since. The bill contains this further specific charge. “Your orators and oratrixes farther state, that they, by W. H. Haywood, acting for himself and the residue of them, and by their counsel in this cause, on the 5th day of October 1842, called on the said Enoch Ensley, and proposed to redeem the said land according to the terms of said agreement with Thomas Haywood: stating to him what that agreement was, as above set forth; and offering him, after charging him with the reasonable rent of the land which he had held as security for the refunding of the purchase money, aforesaid, to pay him the residue of said purchase money, so far as any might be found due, together with all lawful interest. But the said Ensley denied the agreement, alleging, that on the morning of the sale of said land, he called at Thomas Haywood’s house, on his way to the sale, and told Thomas Haywood that he (Ensley) would buy in the said land as he had been requested to do in the said Thomas Haywood’s letter of the preceding day; that he intended to buy the land at any rate; but that he would now buy it, and he, Thomas Haywood, might have it back again by refunding the purchase money; that in a day or two after the sale, he saw Thomas Haywood again, and told him he had bought the land, and for what price; and again told him that by refunding the purchase money he might have the land; but that he, Ensley, expected it to be in a short time, and certainly did not expect to wait always.” The bill seeks to redeem said land, and prays an account of rents, and profits, value of timber wasted, &c.
The defendant, Ensley, in his answer, states that he knew but little respecting the title to said tract of land previous to the day of sale; “that he did not know of any trust for the complainant, though he had heard it said in the neighborhood, that Judge Haywood had. left this property, in some way, in *464 trust for Thomas Haywood’s wife and children. That he had heard the land was advertised for sale, and as it lay adjoining his lands, he resolved to buy it, if it should sell at a reasonable price; that he had formed this resolution, and had the money ready before he was applied to by Thomas Haywood to purchase. He states that, some day or two before the sale, Thomas Haywood did write to this respondent, requesting him to buy the land for his, (Thos. Haywood’s) benefit; stating that he had sent, or was in the,act of sending, a negro down to Alabama to some friends he had there, to get money to buy the land. In his letter no mention was made, as respondent believes, and states, to the best of his recollection, of the wife and children of said Thomas Haywood; that the letter is lost or mislaid, and therefore cannot be produced; that he does not remember to have returned an answer to said letter, but might have done so. That on the morning of the sale, respondent went by the house of said Thomas Haywood and saw him; when the said Thomas renewed his request to this respondent to buy said land, and did not mention his wife or children, as respondent believes. Said Thomas Haywood in this conversation, stated, in substance, what he had already stated, by letter, to respondent, and further, that from the negro’s delay, he expected his friends^ were making arrangements to send the money; he stated that he wished me to let him have the land if he should get the money, alleging that this respondent would be safe, as the land would be good to me for what it would sell for, if he did not get the money from Alabama. He further stated, that, that was the only chance he had to get the money, and if that failed, the land must go. Respondent told said Thomas Haywood, that he intended to buy the land any way, and had made his arrangements to do so before, if it did not go too high; that he would bid it off, and if he bought it, that said Thomas should have it again, if his messenger brought the *465 money.” He denies that he did any thing to prevent competition; that he fairly bought the land at its reasonable cash value. He denies that he agreed to take the land, and pay himself out of the rents and profits. He admits that in October 1842, Thomas Washington Esq. and William H. Haywood called on this respondent, and made enquiry of him in regard to his purchase of said tract of land, and told him they would go into an account with him of what was due, taking principal and interest of purchase money, and deducting rents; and that they would pay him the balance of principal and interest due him; and that it was their intent to redeem said land upon an alleged agreement, to that effect, as stated in the bill. They did not, however, produce, or tender any money to respondent, nor does he believe they had it to tender. It is true, respondent denied the agreement as stated by Washington and Haywood, and refused to permit them to redeem under said agreement and on the terms they proposed. This respondent then stated to them, in substance, the circumstances of his purchase, as he has above stated them in his answer. He told them that the dependance of Thomas Haywood for redeeming, was upon money expected by a boy he had sent to Alabama; and that when that failed, respondent considered the matter at an end. He states, “that he was kindly disposed towards Thomas Haywood, and was willing to give him the chance he asked to get back his land, but never supposed he was placing an indefinite mortgage upon the land. The plaintiff insists in hi's answer, that Thomas Haywood had no right to redeem, because he had no interest in the land.
It is proved by Mr. Washington, whose deposition makes part of the evidence in the cause, that Ensley, in stating the terms of the agreement with Thomas Haywood, admitted that he, Ensley, on the morning of the sale of said land, and on *466 his way to the sale, called at the house of said Haywood, and told him that he, Ensley, would buy in said land as he had been requested in Haywood’s letter of the preceding day; and that he, Thomas Haywood, might have it back again by refunding the purchase money. And that in a day or two after the sale, he again saw Thomas Haywood, and informed him that he had bought the land, and for what price, and repeated to him that, by refunding the purchase money, he might have the land. That no time was fixed for the refunding of the purchase money; but that he, Ensley, expected it to be in a short time, and did not expect to wait always. On the view we have taken of the case, it is unnecessary further to notice the proof. The jurisdiction of a court of equity to enforce the specific execution of a trust, declared by parol, in relation to real property, if plain and unambiguous in its terms, and established by clear and satisfactory evidence, is well established ; and indeed, is fully admitted by the counsel of the defendant in this case. The ground of defence assumed in argument is, that the proof wholly fails to support the case made out in the bill., It is insisted in the first place, that the argument on the p'art of the defendant, to purchase the tract of land in controversy, and to allow the same to be redeemed, was made with Thomas Haywood alone, and exclusively for his own benefit: that at the time of making the agreement, defendant was ignorant of the equitable right of the complainants; that they were not parties to the agreement, nor was it made for their benefit; and therefore they cannot avail themselves of it. This ground of defence cannot be maintained, because from the defendant’s own admission, in his answer, he had notice of the equitable title of the complainants at the time of entering into said agreement: the defendant, in his answer, it is true, says he did not know of any trust for the complainant; though he admits “he had heard it said in the neighborhood, that judge Haywood had left this property, in some *467 way, in trust for Thomas Haywood, “wife and children.” This, if not actual notice, was at least sufficient to have put the defendant upon inquiry; and, in equity, will be regarded as sufficient to bind him; he cannot be allowed to protect himself upon the ground that he intentionally omitted to make inquiry in order to avoid knowledge of complainant’s title. The defendant therefore will be held a trustee for the complainants, and the agreement will be taken as having been made for their benefit. But, aside from the question of notice to the defendant, we are of opinion upon the facts of this case, that the agreement made with Thomas Haywood, standing in the relation that he did to the complainants, would enure to their benefit, and entitle them to maintain a bill for its specific execution.
2d. It is contended, that the right to redeem the land was limited as to time; that it was based upon the expectation of receiving the redemption money from Alabama in some short period, and that upon failure of this expectation, the right to redeem was to be at án end. This proposition, we think, is not tenable. In the first place, it is incompatible with the object of the agreement. Thomas Haywood’s design was to save the land, and the defendant professed to be willing to aid him in doing so. With such purpose, it would seem strange that the right to redeem the land, which by law exists ed for two years from the sale, should, by the agreement, have been narrowed down and limited to a few weeks, at most. This, so far from conferring a benefit on Thomas Haywood, or, on his wife and children, would have been just the reverse. It is said, however, in argument, that the agreement was made in mutual ignorance of the law; this does not appear from anything in the record, and the presumption of law is otherwise. But the fact assumed, that the time for repayment of money was limited, is not only unsupported by the evidence in the-case, but is disproved. It-is distinctly alledged *468 in the bill, upon the admission of defendant, that no time was fixed for the refunding of the purchase money. This charge is neither denied, nor directly responded to in the answer. The consequence is, that the complainants are put to the necessity of proving the allegations, and this they have done very fully by the testimony of Mr. Washington; and one witness is sufficient to support a charge, either not denied or evasively denied. It may be remarked that it is not indicated by anything in the record, that any definite time was agreed upon between the parties, within which the money should be refunded to the defendants; at most, there was merely an expectation that it would be paid' in some “short time.”
To restrict, or limit the right of redemption in the present case, unless upon plain, direct proof that such was the agreement of the parties, would be unwarranted either upon principle or authority. By analogy to the case of a mortgage» the right of redemption is to be favored; and will be decreed in equity, if asserted in reasonable time. We do not think lapse of time, in this case, interposes any obstacle to the relief sought by the complainants. The decree of the chancellor will be affirmed with costs.